UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

AMIR BAKHTIARI,

    Defendant.

No. CR 18-0009 WHA

**ORDER RE RENEWED MOTION FOR COMPASSIONATE RELEASE**

A prior order requested supplemental briefing, discussed some relevant facts, and quoted the legal standard, all of which this order does not repeat (Dkt. No. 188). This decision follows a hearing and several rounds of supplemental briefs.

One new factual development bears on this decision. The parties disagree about the release date set for Offender Bakhtiari, with the government contending he has received First Step Act time credits and the defense saying he has not, but that he is entitled to them. The issue hinges on his immigration status. This order cannot resolve that issue; the BOP must. Suffice to say his release could be, after application of First Step Act time credits, December 28, 2022. The BOP website currently provides a release date of November 27, 2023. *See* https://www.bop.gov/mobile/find_ inmate/byname.jsp#inmate_resultsme (accessed April 30, 2022). Since, however, the parties seem to agree on his release date, he appears to have served just over 75% of his projected term in the BOP.

As for the legal issues, supplemental briefing has litigated whether issue exhaustion is required on motions for compassionate release. The answer is yes. Both sides appear to agree that the statute is silent on whether issue exhaustion is required, that our court of appeals has not spoken directly to this question, and that other courts are divided. Our court of appeals has, however, held that a movant must exhaust BOP remedies with each subsequent motion for compassionate release. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021). At least one district court has read *Keller* to require "issue exhaustion." *United States v. Narez*, 2021 WL 5566787, at *3–4 (E.D. Cal. Nov. 29, 2021) (Judge Anthony W. Ishii).

To be sure, other decisions have found issue exhaustion is not required because the process of requesting release from the BOP is non-adversarial. A key decision on point, however, sounds in the Supplemental Security Income context. The Supreme Court did not require issue exhaustion, reasoning that benefits review is nonadversarial and "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues." *Sims v. Apfel*, 530 U.S. 103, 109–10, 112 (2000). No language in the statute or authorities cited by either side suggests the BOP has a similar affirmative obligation. This renders the "nonadversarial" argument against issue exhaustion less compelling in the BOP context.

Courts have also gone beyond the grounds raised to the BOP because issue exhaustion is either not required by the statute or, if implied, it is a waivable requirement not a jurisdictional bar. *See United States v. Torres,* 464 F. Supp. 3d 651, 655 (S.D.N.Y. 2020); *Miller v. United States*, 453 F. Supp. 3d 1062, 1065 (E.D. Mich. 2020). It is also true that Congress knew how to write an issue exhaustion requirement when it wanted to. *See, e.g.*, 29 U.S.C. § 160(e) (NLRB issue exhaustion). But in *Zhong v. United States Department of Justice*, the Court of Appeals for the Second Circuit pointed out that while a federal immigration statute did not require issue exhaustion as a jurisdictional matter, it did require issue exhaustion as "a *statutory* matter." 480 F.3d 104, 121 (2d Cir. 2007) (emphasis in the original).

On balance, the arguments for issue exhaustion are more compelling. Assuming, *arguendo*, that the failure to exhaust poses no jurisdictional bar, this order declines to waive

2

the requirement. Consequently, this order may not consider as an extraordinary and compelling circumstance for purposes of triggering Section 3582(c)(1)(A) any issue Offender Bakhtiari raises herein that he did not first raise to the BOP. In his request to the BOP, Offender Bakhtiari mentioned the COVID-19 lockdown and stated,

> I would like to request for [sic] compassionate release based on my medical condition disability (California Permanente Disability) Asthma and Type II Diabetes, which listed [sic] on my medical record. I have two U.S born childrens [sic] living in Dallas Texas [sic]. I am also holding legal status and/have no detainer as I have immigration deportation waiver and there is no deportation to Iran"

(Dkt. No. 186-1). The BOP denied his request. It cited his lack of ICE detainer but status as an immigrant without legal status. The latter condition, according to the BOP, rendered him "ineligible" for compassionate release. The rejection also noted his "low" security risk, his lack of offense history, his age (54), and health status ("SCRN 1 Healthy Simple Care"). The BOP concluded: "Given the above factors, it does not appear that Bakhtiari, Amir is eligible for compassionate release. . ." (Dkt. No. 186-2). The district court may evaluate those issues. Both sides now appear to agree that the sole issue he did not raise to the BOP but now raises is service of "hard time," including frequent lock downs, due to the pandemic. The defense also characterizes this as psychological stress due to fear of contracting COVID-19 in the congregate environment (Dkt. No. 176 at 5). This order does not weigh "hard time" as an "extraordinary and compelling reason" for release. Even if he had preserved the issue, however, the undersigned would not be inclined to reduce his term from December 2022 to May 2022.

His remaining legal issues do not amount to extraordinary and compelling reasons to revisit his sentence.

*First*, the record does not show that the medical attention he is receiving for his health conditions is inadequate. And, his health conditions themselves do not appear to put him at a risk from COVID-19 extreme enough to warrant release. Offender Bakhtiari suffers from hypertension, asthma, Type II diabetes, and high cholesterol. Medical records from the BOP

1  confirm the above conditions (Dkt. Nos. 146, 181-1). Evidence suggests he further suffers
2  from early-onset Alzheimer's/dementia.*

3  His asthma seems under control. As of June and August 2021, Offender Bakhtiari was
4  treated by BOP medical staff. He has received an albuterol inhaler for use "as needed" as well
5  as a second inhaler (*see, e.g.*, *id.* at 115). Asthma can constitute a risk factor for COVID-19,
6  but Offender Bakhtiari also failed to reduce his own risk by immediately accepting the
7  COVID-19 vaccine when it was offered to him the first time. The record is silent as to why.
8  He asked for the vaccine before it was offered. Perhaps he later refused because he did not like
9  the one offered, but we are left to speculate. It is further true that he had to wait between
10 August and December of 2021 to get the vaccine after requesting it again. And there does not
11 appear to be any indication of when Offender Bakhtiari can be boosted (*see* Dkt. Nos. 193 at 3;
12 195 at 1–2). The BOP's laxness in vaccinating those in its charge is troubling but nonetheless
13 does not qualify as an extraordinary circumstance necessary to trigger consideration of
14 compassionate release.

15 Further, Offender Bakhtiari requested that his family be allowed to provide him with a
16 nebulizer in June and in August of 2021 but the BOP informed him he did not qualify "to need
17 a nebulizer machine" (*see* Dkt. No. 181 at 167, 170, 173). The United States has submitted
18 extensive information about the function of a nebulizer and the risk of aerosolizing pathogens
19 (Dkt. No. 193-1, Module 7 at 4): "Institutions should minimize, to the greatest medical extent,
20 the use of AGPS [Aerosol-Generating Procedures, e.g., nebulizers] to mitigate the risk of
21 COVID-19 transmission." This order accepts that policy as sound. It also accepts, as
22 uncontradicted, that Offender Bakhtiari did not qualify for a nebulizer when he requested it
23 (whether determined by a nurse or doctor). Finally, nothing in our record supports a diagnosis
24 of chronic obstructive pulmonary disease for Offender Bakhtiari (Dkt. No. 176 at 3).

---

* Offender Bakhtiari is housed at a facility run by a private contractor of the BOP, the GEO Group, Inc. This order refers to the BOP generically.

4

Next, his hypertension, diabetes, and cholesterol appear managed.  When a prior order herein considered his initial motion for compassionate release, counsel highlighted his hypertension range as 137/75 to 128/88 (Dkt. No. 144 at 5).  The BOP records show that during his tenure he has been seen numerous times for hypertension which had, in December 2020, improved with weight loss; as of November 2021 he was not prescribed medication for it (Dkt. No. 181-1 at ECF 151, 164).  His blood pressure readings from 2021 fell in the same approximate range as quoted by counsel, though in August 2021 readings fell under (101/64) and in November 2021, over (150/91) (*see, e.g.*, *id.* at 5).  As for diabetes, BOP notes indicate that Offender Bakhtiari's efforts as of October 2020 to control diabetes with weight loss appeared to improve his labs.  He also, however, reported that he had begun to experience painful fingers and toes (*id.* at 177).  "Peripheral neuropathy" is a symptom of diabetes.  Indeed, in May 2021, the BOP notes state that Offender Bakhtiari was "controlling his diabetes with diet and exercise," even though the notes show he continued to present with peripheral neuropathy (*id.* at 128).  Finally, it appears that by August 2021, Offender Bakhtiari's high cholesterol had improved and his "chronic care" for that condition was terminated (*see id.* at 95).

Offender Bakhtiari also contends he suffers from early onset Alzheimer's and dementia.  He argues that Alzheimer's and dementia put him at greater risk of contracting or becoming seriously ill with COVID-19, citing scientific studies (Dkt. No. 176 n. 3, incorporating Dkt. No. 144 at 5–6).  *See* https://www.sciencenews.org/article/coronavirus-covid-19-genetic-risk-factors-alzheimers-disease; *see also* https://www.webmd.com/lung/news/20200527/alzheimers-gene-linked-to-severe-covid-19-riskd.com.  The government has called the science "preliminary" (Dkt. No. 152 at 16).

As for evidence of this condition, Offender Bakhtiari was found eligible for disability and his driver's license was suspended due to suspected early-onset Alzheimer's.  Probation notes it in the PSR but did not verify the diagnosis for sentencing (Dkt. Nos. 108 at ¶ 56; 110 Exhs. A, B; 189 at Exh. A).  The government notes that in the offender's mental health screenings

from the BOP, the records do not reflect abnormalities. For instance, in November 2021, the notes describe his immediate, recent, and remote memory as "good" (Dkt. No. 181 at 70). On May 10, 2020, however, Offender Bakhtiari did request a visit with a neurologist/physician. The BOP responded by requiring him to submit a "sick call slip" (Dkt. No. 190). The outcome of that disposition is unknown. All in all, early-onset Alzheimer's is not the same as full-blown Alzheimer's. The BOP records do not corroborate his claimed cognitive impairment, let alone any worsening of it. The decision to impose his sentence expressly considered his medical conditions, which were then known (Dkt. No. 119 at 29–30). Finally, it is not entirely clear that Mr. Bakhtiari's present motion states Alzheimer's as a ground for compassionate release.

Finally, the Intercept Article from 2020 alleging medical neglect, alone, does not tip the scales. *See* Cuban Man Died of COVID-19 In Private Prison Plagued with Medical Neglect, *The Intercept* (August 14, 2020), https://theintercept.com/2020/08/14/coronavirus-immigrant-prison-taft-north-lake-death/. (Another inmate died of COVID at some point. *See* https://www.bop.gov/coronavirus/index.jsp.) Offender Bakhtiari has responded that the Intercept article supports his contention that he has served "hard time" (Dkt. No. 195 at 1). As stated, this order cannot consider that ground. In all, while the risk of COVID-19 remains despite the protections offered by the J&J vaccine, the risk is not as great as it was at the onset of the pandemic.

*Second*, Offender Bakhtiari's immigration status does not provide an extraordinary or compelling reason for release. Circumstances have not meaningfully changed the importance of his immigration status since sentencing, though it now appears he will not be deported once released.

*Third*, Offender Bakhtiari cites his family as a compelling or extraordinary reason for release. His school-age children need him. He intends to live with his wife and children if released. This order credits his representations and it appears his family would offer a stable

environment.  It is not clear how much he could care for his children given his claimed cognitive impairment, however.

    This order finds the combination of reasons Offender Bakhtiari raises does not comprise an extraordinary and compelling circumstance.  This order does not reach the Section 3553 factors.

    For the reasons stated, the motion is **DENIED**.

    **IT IS SO ORDERED.**

Dated:  April 30, 2022.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE